**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| **FELIX HASSON** | ) | |
| | ) | |
| *Plaintiff,* | ) | **Case No. 24-9693** |
| | ) | |
| **v.** | ) | **Jury Trial Demand** |
| | ) | |
| | ) | |
| **LUMINOSITY GAMING (USA), LLC** | ) | |
| | ) | |
| **LUMINOSITY GAMING INC.** | ) | |
| | ) | |
| **EVEN MATCHUP GAMING INC.** | ) | |
| | ) | |
| **GEOFFREY TIRRELL** | ) | |
| | ) | |
| **JONATHAN MENDEZ** | ) | |
| | ) | |
| **UNKNOWN DEFENDANTS 1** | ) | |
| | ) | |
| **UNKNOWN DEFENDANTS 2** | ) | |
| | ) | |
| **WAYPOINT CAFE LLC** | ) | |
| | ) | |
| **FAWN CHANDLER** | ) | |
| | ) | |
| **UNKNOWN DEFENDANTS 3** | ) | |
| | ) | |
| **UNKNOWN DEFENDANTS 4** | ) | |
| | ) | |
| **HOUSE OF 3000 LLC** | ) | |
| | ) | |
| **JEFFREY FRANCO** | ) | |
| | ) | |
| **UNKNOWN DEFENDANTS 5** | ) | |
| | ) | |
| **UNKNOWN DEFENDANTS 6** | ) | |
| | ) | |
| **UNKNOWN DEFENDANTS  7** | ) | |
| | ) | |

1

**UNKNOWN DEFENDANTS 8**                    )
                                           )
                      *Defendants*.        )
_____)

## **COMPLAINT**

Plaintiff Felix Hasson (hereinafter "Plaintiff") by and through his undersigned counsel, hereby files this Complaint against Defendants Luminosity Gaming (USA), LLC, Luminosity Gaming Inc. (collectively "Luminosity"), Event Matchup Gaming Inc. ("EMG"), Geoffrey Tirrell, Jonathan Mendez, Unknown Defendants 1, Unknown Defendants 2,  Waypoint Cafe LLC ("Waypoint"), Fawn Chandler, Unknown Defendants 3; Unknown Defendants 4, House of 3000 LLC ("House of 3000"), Jeffrey Franco, Unknown Defendants 5, Unknown Defendants 6, Unknown Defendants 7, and Unknown Defendants 8, for violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982; N.Y. Civ. Rights Law §§ 40, 40-c, and 41; the New York City Human Rights Law, NYC Administrative Code 8-107; New York Executive Law § 296; and common law breach of contract to recover monetary damages, attorney's fees, costs and obtain injunctive and declaratory relief.

## **JURISDICTION AND VENUE**

1.    This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 as the action arises under, inter alia, 42 U.S.C. § 2000a and 42 U.S.C. § 1981, laws of the United States, and all other claims are part of the same case or controversy pursuant to 28 U.S.C. § 1367.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendants have conducted business in this judicial district and may be found conducting business in this judicial district.

3.     On or about the date of filing this Complaint, Plaintiff sent a copy to the New York State Division of Human Rights and the New York City Commission on Human Rights to provide notice of the violations described herein.

## **PARTIES**

4.     Plaintiff Felix Hasson is a natural person currently residing at 6310 Main Street, Houston, TX 77005. He is a professional videogamer whose game of choice is Super Smash Brothers Ultimate ("Smash").

5.     Defendant Luminosity Gaming (USA), LLC is or was a California registered limited liability company with an address of 388 Market St., Suite 1300, San Francisco, California, 94111. Defendant Luminosity Gaming Inc. is a Canadian entity believed to have an address of 90 Eglinton Ave E, Toronto, Ontario M4P 1H4, Canada. These entities, believed to have acted in concert in banning Plaintiff from its Smash tournaments, are collectively referred to herein as "Luminosity."

6.     Defendant EMG is a Canadian entity that has conducted business at 8th Ave, New York, NY 10001. EMG hosts gaming tournaments and events. Its address is presently unknown. EMG banned Plaintiff from some or all of its Smash tournaments.

7.     Defendant Geoffrey Tirrell is a natural person with an address of 125 Saint Cloud Ln, Boca Raton, FL 33431.  He served as an organizer for the EMG and Luminosity tournament Luminosity Makes Big Moves tournament ("LMBM") and, in conjunction with Unknown Defendants 1 described *infra*, made the decision to ban Plaintiff from LMBM.

8.     Defendant Jonathan Mendez is a natural person believed to reside in Atlanta, Georgia whose address is presently unknown and who requested or otherwise incited the banning of Plaintiff from the Luminosity Makes Big Moves tournament ("LMBM"). His address can be

obtained through discovery of Luminosity and EMG as Mendez has registered and participated in their tournaments including the January 2024 LMBM tournament.

9.     Unknown Defendants 1, who with Tirrell collectively made the decision to ban Plaintiff from LMBM, are currently unknown to Plaintiff in name and address. However, their identities and addresses can be obtained through discovery and/or subpoenas directed at the persons and entities organizing LMBM, including Luminosity, EMG, and Tirrell.

10.     Unknown Defendants 2, who, like Mendez, are believed to have contacted the LMBM organizers to request or otherwise incite the banning of Plaintiff from LMBM, are currently unknown. However, their identities can be determined through discovery and/or subpoenas directed at the persons and entities organizing LMBM, including Luminosity, EMG, and Tirrell.

11.     Defendant Waypoint is a domestic limited liability company doing business at 65 Ludlow St, New York, NY 10002.  Waypoint is an internet and gaming cafe open to the general public, which functions as a restaurant and a host of gaming events. Waypoint has banned Plaintiff from competing in its Smash tournaments.

12.     Defendant Fawn Chandler is a natural person affiliated with Waypoint, whose address is presently unknown, and who, along with other agents of Waypoint described *infra* as Unknown Defendants 3, made the decision to ban Plaintiff from Waypoint. Chandler's address can be determined through discovery and/or subpoenas directed at Waypoint.

13.     Unknown Defendants 3, who along with Chandler made the decision to ban Plaintiff from Waypoint, are currently unknown to Plaintiff in name and address. However, their identities can be obtained through discovery or subpoena of Waypoint and Chandler.

14.     Unknown Defendants 4 are believed to have contacted Waypoint and its tournament organizers to request or otherwise incite the banning of Plaintiff from Waypoint. They can be

identified and their addresses can be ascertained through discovery and/or subpoenas directed at the persons and entities involved with Waypoint such as its ownership, their tournament organizers, and Chandler.

15.    Defendant House of 3000 is a domestic limited liability company registered in New York with a service of process address of 790 11th Ave. #9B, New York, NY, 10019. House of 3000 has banned Plaintiff from its Smash tournaments.

16.    Jeffrey Franco is a natural person and the head tournament organizer for House of 3000 who, in conjunction with Unknown Defendants 5, banned Plaintiff from House of 3000 tournaments. His address is presently unknown but can be obtained through discovery or subpoena of House of 3000.

17.    Unknown Defendants 5, who are presently unknown, are believed to have coordinated and collectively decided with Franco to ban Plaintiff from House of 3000 tournaments. Their addresses are presently unknown but can be obtained through discovery or subpoena of House of 3000.

18.    Unknown Defendants 6, who are presently unknown, are believed to have contacted House of 3000, Franco, and other affiliated tournament organizers to request or otherwise incite the banning of Plaintiff from House of 3000. They can be identified and their addresses can be ascertained through discovery and/or subpoenas directed at the persons and entities involved with House of 3000 such as its ownership, their tournament organizers, and Franco.

19.    Unknown Defendants 7, who are presently unknown, are believed to have conferred and decided collectively to ban Plaintiff from several servers on Discord Inc. ("Discord"), specifically the Smash Crew Server and Ryugacord. Their identities are known to Discord and can be obtained through third-party discovery and/or subpoena of Discord, which has a business address of 444 De Haro Street, Suite 200, San Francisco, CA 94107.

20.   Unknown Defendants 8, who are presently unknown, are believed to have requested or otherwise incited the banning of Plaintiff from the Smash Crew Server and Ryugacord Discord servers. They can be identified and their addresses can be ascertained through discovery and/or subpoenas directed at Discord and Unknown Defendants 7.

## FACTS

**Plaintiff's Gaming History and Success**

21.   Plaintiff Felix Hasson is an American competitive video gamer specializing in Super Smash Brothers Ultimate ("Smash").

22.   Smash is a platform-based fighting game made by Nintendo in which players use iconic video game characters to fight each other and try to knock their opponents off of the screen. There are eighty-nine characters available to choose from, each with their own unique abilities and tools that players can use to outplay their opponents.

23.   Plaintiff began competitive gaming in or around 2014, playing online tournaments in or around 2020, and in-person tournaments in or around 2021. By or around 2022, he was ranked #3 in Israel, where he resided during a gap year from his education, and he was highly competitive for the #1 spot.

24.   Following Plaintiff's gap year, he returned to the United States and competed in local, regional, and national tournaments in New York, Texas, Florida, and recently California. By or around 2023, Plaintiff was ranked #1 at Rice University, and is currently the 19th best player in the world among players who play as Terry, one of the characters players can select.

25.   In or around 2024, Plaintiff was invited by Nintendo as one of six players to compete in the Smash Brothers Ultimate Championship 2024 in San Francisco after placing first in the Southwest North American Qualifier.

26.    Over the course of his career, Plaintiff has won prize money, gaming equipment, trophies, and additional items. He estimates the total value of his winnings at around $7,000.

**Plaintiff's Outspoken Support for and Affinity to His Ancestral Homeland of Israel and His Opposition to Those Who Seek its Destruction**

27.    Plaintiff is a Jewish-American who feels and publicly expresses a deep affinity for Israel, his family's ancestral homeland. While Plaintiff and his family have lived outside of Israel for countless generations, Plaintiff identifies Israel as his ultimate place of national origin. His racial and religious identities as a Jew are also intimately connected to Israel.

28.    Plaintiff's connection to Israel is neither idiosyncratic nor can it be chalked up to mere politics; it is at the core of what makes Plaintiff (and millions of others) Jewish. The Bible itself references this ancient Jewish hope[1] while the Prophets and Writings of the Hebrew Bible repeatedly record this aspiration.[2] From a Jewish law perspective, over half of the Biblical commandments that religious Jewish people are bound to obey are specifically tied to the Jewish homeland.[3] From a doctrinal point of view, belief in and hope for the return to Zion is literally part of the 13 Principles of Jewish Faith.[4]

29.    Indeed, the Jewish religion is predicated on the belief that God promised Abraham that he and his descendants shall live in and maintain sovereignty over the Land of Israel,[5] and much of the narrative portions of the Torah and greater Jewish Bible detail the tribulations Jews experience when they do not have sovereignty over this land and their resulting struggle to achieve and maintain such sovereignty. Even from a purely secular perspective, this connection to Israel is a

---

[1] *See e.g.*, *Deuteronomy* 30:1-5

[2] *See e.g.*, *Isaiah* 11:11-12; *Jeremiah* 29:14; 20:41-42; *Psalm* 126; *Psalm* 137.

[3] *About Us,* TORAH VEHA'ARETZ INSTITUTE, https://en.toraland.org.il/about/.

[4] *Maimonides Introduction to Perek Helek,* MAIMONIDES HERITAGE CENTER, https://www.mhcny.org/qt/1005.pdf. (explaining the 12th Fundamental Principle).

[5] Genesis 12:1-9.

core feature of the cultural identity of those of Jewish national origin and race like Plaintiff. Jewish identity is multifaceted, including aspects of race, religion, national origin, ethnicity, and culture, and Jews receive protection from discrimination under a number of civil rights acts, including Section 1981. *See, e.g., Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987) ("Jews and Arabs were among the peoples then considered [when these civil rights statutes were passed] to be distinct races and hence within the protection of the [civil rights] statute[s]."). Whether one views Plaintiff's Judaism through the prism of religion, race, or national origin, Jewish sovereignty and self-determination in Israel is core to all three identities.

30.    In pursuit of his ancestral, racial, and religious connection to Israel, Plaintiff first visited Israel in or around 2015 and thereafter spent a gap-year there from approximately August 2021 to June 2022, where he studied Jewish scripture and participated in technology internships.

31.    On or about September 13, 2021, Plaintiff posted on X, then Twitter, "in the west bank bumpin carti . . . i got to introduce these settlements to off the grid" ("*Donda* Tweet"). Below this tweet, he posted a photograph of the Greek god Prometheus giving man fire. At the time, Plaintiff was on a hike in Judea and Samaria—sometimes called the "West Bank" — at Wadi Gelt. Listening to the just released *Donda* music album, Plaintiff joked that he was like Prometheus by introducing a paradigm-shifting album to the backwoods of Israel. Plaintiff's tweet served as a celebration and affirmation of his connection to his ancestral homeland and the time he was spending there. In fact, the region he hiked, Judea, is o the root word for the term "Jew."[6]

---

[6] *See* Encyclopedia Britannica, *Jew,* (last checked Nov. 28, 2024), https://www.britannica.com/topic/Jew-people ("The term Jew is thus derived through the Latin Judaeus and the Greek Ioudaios from the Hebrew Yĕhūdhī. The latter term is an adjective occurring only in the later parts of the Hebrew Bible and signifying a descendant of Yehudhah (Judah), the fourth son of Jacob, whose tribe, together with that of his half brother Benjamin, constituted the Kingdom of Judah.").

32.    On or about, July 27, 2022, the Israel Defense Forces ("IDF") participated in a popular meme trend by featuring characters from the "Mr. Man" and "Little Miss" children's book series in a post on its official Twitter account.[7] Plaintiff responded to a retweet of this meme with his own, showing an image of a man with an exaggerated square jaw, known in meme culture as a "Chad," which is intended to symbolize confidence and strength, backdropped against an Israeli flag ("Chad Tweet"). Plaintiff wrote "based idf." Plaintiff's tweet served a celebration and affirmation of his connection to his ancestral homeland of Israel, the time he spent there, and those who defend it from anti-Semitic aggression.

33.    The concept of a Jewish warrior class and national defense of the Land of Israel are as integral to Plaintiff's Jewish religion, race, and national origin as the land of Israel is itself. Indeed, from a biblical perspective, the first Jewish army is described a mere two chapters after the Torah details God's promise of Israel to Abraham.[8]

34.    On or around January 19, 2023, an X user tweeted a graph of the most popular Smash characters in every country, including "Palestine," a proposed state including Gaza and parts of the West Bank, even though there are no tournaments held in Gaza or the West Bank. Plaintiff retweeted this post and wrote "gaza has a smash scene?" Another user replied to Plaintiff that Palestinians are probably not good at the game, and Plaintiff responded "palestine so free." Plaintiff also noted that it would be ironic if the character most frequently used by Palestinians used bombs as their weapon of choice ("Rocket Tweets"), an allusion to the fact that Hamas, the popularly supported governing regime in Gaza, had fired thousands of bombs at Israeli civilians

---

[7] *See* https://x.com/brndxix/status/1552174831201812480 (Jul. 27, 2022).

[8] Genesis 14:14 ("And Abram heard that his kinsman had been taken captive, and he armed his trained men, those born in his house, three hundred and eighteen, and he pursued [them] until Dan.").

since gaining control of Gaza in 2007 and previously employed suicide bombings against Israeli civilians, all with the popular support of the Palestinian people.

35.    On or about October 7, 2023, in response to Hamas's invasion of, and its massacre of over 1,200 people in Israel, Plaintiff tweeted "gaza got something big coming their way for sure" ("October 7 tweet"). Plaintiff offered this commentary as an obvious and predictive geopolitical observation.

36.    On or about December 20, 2023, Plaintiff replied "LMAOOOO," a slang expression used on social media platforms to denote laughter, to a screenshot of X-user @Selwan_i's celebratory tweet on October 7, juxtaposed against her December 16, 2023 tweet noting that she lost everything ("LMAO tweet"). Plaintiff wrote his response in support of the people in his ancestral homeland and in opposition to those who celebrate terrorism committed against them.

37.    As a result of Plaintiff's above detailed Judaism and Zionism, and his related public celebration and support of his Jewish race, religion, and national origin, Plaintiff was banned from a number of Smash tournaments and other places of public accommodation. These venues, however, continue to admit individuals espousing well-established anti-Semitic views.[9]

---

[9] Antisemitism is defined in detail by The International Holocaust Remembrance Alliance ("IHRA"), a multi-governmental organization with 35 member countries, including the United States, with a mission "to strengthen, advance and promote Holocaust education, remembrance, and research worldwide." *See* International Holocaust Remembrance Alliance, *About The International Holocaust Remembrance Alliance* (last visited Nov. 19, 2024), https://holocaustremembrance.com/who-we-are. Recognized as a "vital tool in the struggle against antisemitism" by the New York Governor's office (*See* Proclamation of Governor Kathy Hochul (Jun. 12, 2022), https://www.governor.ny.gov/sites/default/files/2022-06/IHRA_Antisemitism_Definition_Proclamation-2022.pdf), IHRA defines antisemitism as encompassing, inter alia, "making mendacious, dehumanizing, demonizing, or stereotypical allegations about Jews as such or the power of Jews as collective — such as, especially but not exclusively, the myth about a world Jewish conspiracy or of Jews controlling the media, economy, government or other societal institutions ("Jews Control the World Trope"); accusing Jews as a people of being responsible for real or imagined wrongdoing committed by a single Jewish person or group, or even for acts committed by non-Jews ("Collective Responsibility Trope"); denying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor ("Jewish Self-Determination Denial"); using the symbols and images associated with classic antisemitism (e.g., claims of Jews killing Jesus or blood libel) to characterize Israel or Israelis ("Blood Libel Trope"); and drawing comparisons of contemporary Israeli policy to that of the Nazis ("Holocaust Inversion")." International Holocaust Remembrance Alliance, *Working Definition of Antisemitism* (last visited Nov. 19, 2024), https://holocaustremembrance.com/resources/working-definition-antisemitism (cleaned up).

**Plaintiff's Ban from LMBM**

38.    On or about December 20, 2023, Jonathan Mendez (X handle @Bravo_irl) retweeted Plaintiff's *Donda*, Chad, Rocket, and October 7 tweets and, directing his retweet to Maximillian Krchmar (X handle @MaxKetchum_), Cyrus Gharakhanian (X handle @Cagt3000), and Geoffrey Tirrell (X handle @Aerodusk), who are event organizers of EMG's and Luminosity's "Luminosity Makes Big Moves" event ("LMBM"), asked "why is this racist zionist weasel allowed at your events?"[10] Mendez further tweeted "how is any Palestinian supposed to feel safe at your major when people who relish in and cheer for the complete extermination of their friends and family are allowed in the same space? Genuine question[.] [T]his goes beyond smashy bros, LMBM should be a safe space for everyone"[11] "israel is committing genocide and anyone who cheers it on should be treated with appropriate scorn."[12]

39.    Shortly after and in a direct response to Mendez's tweets, Tirrell banned Plaintiff from LMBM, announcing that he had been "removed" on X.[13] Plaintiff only learned of this development when a friend informed him that the situation was going viral on X.  Plaintiff subsequently messaged Tirrell on X for clarification but did not receive a response.

40.    Upon information and belief, given the structure of EMG, in which Tirrell is but one of several individuals required to approve a ban, individuals other than Tirrell, herein referred to as Unknown Defendants 1, were instrumental in banning Plaintiff and their identities can be obtained through discovery and subpoenas of Tirrell, EMG, and Luminosity.

---

As of August 2024, 35 States and the District of Columbia have adopted IHRA, including Texas and New York. American Jewish Committee, *Use of the Working Definition in the U.S.* (last visited Nov. 19, 2024), https://www.ajc.org/use-of-the-working-definition-in-the-us.

[10] *See* https://x.com/Bravo_irl/status/1737605631266218252 (Dec. 20, 2023).

[11] See https://x.com/Bravo_irl/status/1737605634340876518 (Dec. 20, 2023).

[12] See https://x.com/Bravo_irl/status/1737820454075666839 (Dec. 20, 2023).

[13] *See* https://x.com/Aerodusk/status/1737653251481424157 (Dec. 20, 2023).

41.    Upon information and belief, Mendez was not the only person who contacted or otherwise encouraged or incited LMBM's organizers to ban Plaintiff from the tournaments on grounds related to his race, religion, and national origin. These other individuals, herein referred to as Unknown Defendants 2, were also involved in this conduct. Their identities can be obtained through discovery and subpoenas of Tirrell, EMG, and Luminosity.

42.    At no point has EMG, Luminosity, and Tirrell ("LMBM Defendants") banned Krchmar from any events or terminated their relationship with him despite his history of antisemitism such as a tweet that he posted on or about June 21, 2020 in which he noted, "You know Israel is evil when the only candidate who even dared to speak out against them was the Jewish guy who isn't bought and paid for,"[14] a reference to Senator Bernie Sanders and an allusion to the Jews Control the World Trope. Krchmar has also targeted other ethnicities for stereotyping, for example noting "White people will do shit like this and then be too scared to try Indian food" on or about September 6, 2020 and "Why do white people do shit like tying red white and blue balloons to their mailboxes on July 4th" on or about July 4, 2021.[15] Krchmar participated in the January 2024 LMBM.[16]

43.    Similarly, LMBM Defendants have never banned Mendez from any gaming events despite his routine false and anti-Semitic accusations that Israel is committing genocide (Holocaust Inversion)[17] and use of the term "Zionist" as a pejorative.[18] Mendez has retweeted a photo of Holocaust concentration camp survivors with the commentary "never again (unless we get to do

---

[14] https://x.com/MaxKetchum_/status/1274761361357254656.

[15] https://x.com/MaxKetchum_/status/1411760951720824832.

[16] *See* https://www.start.gg/user/8c016d48/results.

[17] *See* https://x.com/Bravo_irl/status/1715560499599815053 (Oct. 20, 2023); https://x.com/Bravo_irl/status/1718035843816780151 (Oct. 27, 2023); https://x.com/Bravo_irl/status/1741577208567648335 (Dec. 31, 2023); https://x.com/Bravo_irl/status/1814073682249073085 (Jul. 18, 2024).

[18] *See*  https://x.com/Bravo_irl/status/1856048152442184143 (Nov. 11, 2024).

it),"[19] retweeted posts supporting the legitimization of Hamas (noting it is "not something that needs to be excused"),[20] and retweeted conspiracy theories asserting that "many if not most non-combatants killed on [Oct. 7] were killed by the IOF."[21] IOF is an abbreviation of "Israeli Occupation Force," a slur used against the IDF to portray it as an entity of an illegitimate colonialist regime and thus this slur constitutes Jewish Self-Determination Denial. Mendez indicated that it was Israel rather than Hamas who killed most of the Israelis on October 7. Mendez has endorsed similar anti-Semitic sentiments by retweeting posts referring to those in Israel's internationally recognized borders as "settler civilians" in "occupied lands" who act as "colonial oppressors."[22] Mendez competed in the January 2024 LMBM.[23]

44.   LMBM Defendants have also never banned Emily Forman (X handle LyricOfWisdom), who provides analysis and commentary and insights at LMBM, despite her history of anti-Semitism, including Holocaust Inversion tweets such as "Israel is treating these people the same way a certain group in the 1940s treated the Jewish people."[24]

45.   LMBM Defendants have never banned Mohammed Farraj (X handle @MomoOnTheMic), who also provides analysis and commentary at LMBM and has engaged in Holocaust Inversion by falsely accusing Israel of genocide and Plaintiff of supporting said "genocide."[25]

46.   LMBM Defendants have never banned Shoaib Rasooli, who competes under the name "Sho" and tweets under the handle @Shoflowers, despite his history of anti-Semitic posts,

---

[19] *See*  https://x.com/RaeSkywalkerP/status/1741635516104143066/photo/1 (Dec. 20, 2023).

[20] *See* https://x.com/RaeSkywalkerP/status/1741635516104143066/photo/3.

[21] *See* https://x.com/RaeSkywalkerP/status/1741635516104143066/photo/4 (Dec. 18-19, 2023).

[22] *Id.*

[23] *See* https://www.start.gg/user/4e840a83/schedule.

[24] *See* https://x.com/LyricOfWisdom/status/1392838712870985731 (May 13, 2021).

[25] *See, e.g.*, https://x.com/MomoOnTheMic/status/1737883808026783834 (Dec. 21, 2023); https://x.com/MomoOnTheMic/status/1744085430092403142 (Jan. 7, 2024); https://x.com/MomoOnTheMic/status/1776621503775228032 (Apr. 6, 2024).

including false accusations that Israel is engaging in genocide and that Plaintiff is enthusiastic about said "genocide."[26] Rasooli publicly made these comments to LMBM tournament organizer Tirrell, the individual who announced Plaintiff's ban via X. Rasooli competed in the January 2024 LMBM.[27]

47.  Finally, LMBM Defendants have never banned @The_Crowsong (X handle), who competes as "Crowsong," despite his history of engaging in anti-Semitism by making false accusations that Israel is committing genocide, which is a form of Holocaust Inversion.[28] He has also spoken pejoratively about other ethnicities, namely individuals of Caucasian decent, noting "[t]he bible is just god telling people to commit genocide in one half and white people misinterpreting jesus in the other."[29] Crowsong competed in the 2024 LMBM.[30]

48.  To the extent that the LMBM Defendants claim they banned Plaintiff for suspected violations of a neutrally applied "hate speech" policy and not because he is a Jew whose Judaism necessarily entails Zionism and support of Israel, this position is false. There was nothing hateful about Plaintiff's tweets. Moreover, LMBM has welcomed the aforementioned non-Jews engaging in "hate speech" in the form of anti-Semitic tropes, thus applying a discriminatory double standard to Plaintiff because he is Jewish.

49.  LMBM is held at the New Yorker Hotel, 481 8th Ave, New York, NY 10001, functioning both as a hotel and, as made clear by LMBM's presence, a place of exhibition or entertainment.

---

[26] *See* https://x.com/Shoflowers/status/1737747718162772422 (Dec. 21, 2023); for additional genocide accusations *see, e.g.*, https://x.com/Shoflowers/status/1762258085127590200 (Feb. 26, 2024).

[27] *See* https://smashdata.gg/smash/5/player/Sho?id=29992.

[28] *See e.g.*, https://x.com/The_Crowsong/status/1750662267538932073 (Jan. 25, 2024); s*ee also* https://x.com/The_Crowsong/status/1737213058592674062 (Dec. 19, 2023)  (falsely accusing Israel of "ethnic cleansing").

[29] *See* https://x.com/The_Crowsong/status/1582356138146037761 (Oct. 18, 2022).

[30] *See* https://smashdata.gg/smash/ultimate/player/Crowsong?id=328844.

50.    As hosts of LMBM on the hotel's premises, the LMBM Defendants had the authority to admit or deny individuals access to LMBM and associated amenities such as discounted lodging at the New Yorker Hotel and wielded such authority in denying Plaintiff admission.

51.    Participation in LMBM hinged on a contract whereby, for consideration of a participant's agreement to adhere to certain rules and policies, in addition to paying a $110 registration fee, the LMBM Defendants granted admission to LMBM. LMBM offered this ability to contract for the aforementioned to the general public but denied this ability to Plaintiff, a Jewish person. In fact, the tournament organizers accepted Plaintiff's registration fee, but wrongfully denied him admission without refunding Plaintiff.

52.    LMBM featured an "artist alley" where participants could purchase tournament souvenirs, such as unique art that, upon information and belief, would likely appreciate over time. However, because Plaintiff was banned from LMBM, he was deprived of the opportunity to make such purchases.

**Plaintiff's Ban from Waypoint**

53.    On or about December 25, 2023, Plaintiff learned that he was banned from Waypoint when he tried to enroll for a weekly tournament and received an error message noting he was banned. Plaintiff verified the ban with Fawn Chandler (X handle @fawnres), Head Tournament Organizer for Waypoint. In addition, Waypoint announced this ban on X in a post in which it falsely accused Plaintiff of "incitement of hate and violence" and noted a purported "zero-tolerance policy for discrimination, bigotry, and violence towards any group of people," and claimed to be "very clear about this in our venue policies."[31]  Waypoint further accused Plaintiff of "laughing at the deaths

---

[31] *See* https://x.com/WaypointcafeNYC/status/1740802256155353360 (Dec. 29, 2023).

of civilians" and "throwing up gang signs" at Waypoint.[32] In their direct messages, Chandler clarified that Plaintiff was banned solely for his commentary on the Israeli-Palestinian conflict and not for any gang sign misunderstanding. Plaintiff is not a member of a gang.

54.     Chandler further clarified, in direct messages with Plaintiff, that "unanimously the higher ups agreed in a meeting" to ban Plaintiff. The identities of these additional decisionmakers, Unknown Defendants 3, are presently unknown but can be obtained via discovery and subpoena of Waypoint and Chandler.

55.     Upon information and belief, Waypoint and Chandler did not independently make the decision to ban Plaintiff, but were incited to do so by Unknown Defendants 4.

56.     Despite its claimed adherence to a zero-tolerance policy on discrimination, Waypoint has never banned Farraj, despite his history of Holocaust Inversion as described *supra* ¶ 45.

57.     Waypoint has never banned X user @SonicAdvanced2, who competes at Waypoint as "Dwayne" and has participated in at least thirty-five Waypoint tournaments over the past two years,[33] despite his remarks that Zionism, which is the belief in Jewish self-determination in the indigenous Jewish homeland, is as bad as transphobia.[34] "Dwayne" has also publicly attacked other ethnicities, namely individuals of Caucasian descent by posting, "[s]lavery always gets downplayed by white people they never do that shit with the holocaust."[35]

58.     Waypoint has never banned Rasooli, who most recently competed as "Sho" at Waypoint on or about January 30, 2024,[36] despite his history of anti-Semitic Holocaust Inversion described *supra* ¶ 46.

---

[32] *See* https://x.com/WaypointcafeNYC/status/1740802257623593008 (Dec. 29, 2023).

[33] *See* https://smashdata.gg/smash/5/player/Dwayne?id=1528394 and search for "Waypoint" to see the Waypoint tournaments they have competed in.

[34] No URL available. Plaintiff retains screenshots.

[35] *See* https://x.com/Sonicadvanced2/status/1553885508547317760 (Jul. 31, 2022).

[36] *See* https://smashdata.gg/smash/5/player/Sho?id=29992

59.    Waypoint has never banned "Crowsong" despite his anti-Semitic Holocaust Inversion and derisive comments about individuals of Caucasian descent described *supra* ¶ 47. Crowsong has played in at least fifteen Waypoint tournaments since around April 2022 and his most recent tournament was on or about June 11, 2024.[37]

60.    Finally, Waypoint has never banned Erik Pyshnov, who posts and competes as "Troll_Tactics," despite his public endorsement of the Jews Control The World Trope[38] and his engagement in Holocaust Inversion in the form of false genocide accusations.[39] Pyshnov competed in at least eleven Waypoint tournaments in or around 2024, most recently on or about December 3, 2024.[40]

61.    To the extent that Waypoint and Chandler claim that they maintain their bans against Plaintiff for suspected violations of a neutrally applied "hate speech" policy, and not because he is a Jew whose Judaism necessarily entails Zionism and support of Israel, this position is false. Waypoint welcomes non-Jews engaging in anti-Semitic "hate speech," thus applying a discriminatory double standard to Plaintiff, as opposed to a neutrally applied policy. In fact, one X user, @RaeSkyWalkerP, pointed out Waypoint's double standard of banning Plaintiff but not imposing a ban on Mendez, who engages in Holocaust Inversion and Jewish Self-Determination Denial.[41] Rather than addressing its double standard, Waypoint blocked @RaeSkyWalkerP on the X platform.[42] Plaintiff's father, Laurent Hasson, also noted the double standard on the X platform

---

[37] *See* https://smashdag.gg/smash/ultimate/player/Crowsong?id=328844

[38] *See* https://x.com/Troll_Tactics/status/1717941040059985948 (Oct. 27, 2023) ("Israel lobbies Congress, not the president. The military-industrial complex would sooner die than stop supporting Israel. *The American taxpayer has no choice but to fund genocide.*") (emphasis added).

[39] *See* https://x.com/Troll_Tactics/status/1742685939779178630 (Jan. 3, 2024);
https://x.com/Troll_Tactics/status/1771249948022976839 (Mar. 22, 2024);
https://x.com/Troll_Tactics/status/1782857266145681573 (Apr. 23, 2024);

[40] *See* https://www.start.gg/user/2347af6d/results (last checked Nov. 22, 2024).

[41] *See* https://x.com/RaeSkywalkerP/status/1741635516104143066 (Dec. 31, 2023).

[42] *See* https://x.com/RaeSkywalkerP/status/1741911136386056378 (Jan. 1, 2024).

and clarified the obvious in asserting that Plaintiff "laughed at the irony of someone celebrating the murder and rape of Jewish women and children and getting their Karma due."[43] Waypoint also blocked Plaintiff's father on the X platform.[44]

62.    Waypoint is an internet and gaming cafe open to the general public, which functions both as a restaurant and place of exhibition and entertainment as evidenced by the tournaments held there.

63.    As a retail establishment in the business of selling goods and services, including Pokemon cards (that are known to appreciate in value over time), food, and Smash tournament participation, Waypoint offers the general public the ability to contract for said goods and services but denied Plaintiff, a Jewish person, this right.


**PLAINTIFF'S BAN FROM HOUSE OF 3000 EVENTS**

64.    In communicating the Waypoint ban, Chandler advised Plaintiff that all of the tournament organizers in the Tri-State area (New York, New Jersey, Connecticut) unanimously decided to ban Plaintiff from their tournaments. House of 3000 serves as a Tri-State area tournament organizers and production company and at times relevant hereto held events at the now closed Xenozero Gaming in New York City.

65.    Defendant Jeffrey Franco is House of 3000's head tournament organizer. Upon information and belief, Franco was involved in the decision to ban Plaintiff and did not make this decision independently, but rather collaborated with Unknown Defendants 5, who are other employees

---

[43] *See* https://x.com/ldhasson/status/1740835138362118395 (Dec. 29, 2023)
[44] *See* https://x.com/ldhasson/status/1741913072367767562 (Jan. 1, 2024).

and/or agents and/or affiliates of House of 3000. Their identities can be obtained through discovery or subpoenas of House of 3000 and Franco. Upon further information and belief, Franco and Unknown Defendants 5 were contacted by individuals, Unknown Defendants 6, who solicited or otherwise encouraged or incited House of 3000 to ban Plaintiff from the tournaments on grounds related to his race, religion, and national origin.

66.    House of 3000, however, has never banned X user @SonicAdvanced2, who competes at House of 3000 events as "Dwayne" and has participated in at least twelve House of 3000 tournaments over the past three and one-half years,[45] despite his Jewish Self-Determination Denial and attacks on individuals of Caucasian descent described *supra* ¶ 57.

67.    House of 3000 has also never banned Rasooli, who has competed in at least eighteen House of 3000 events since around 2018 (most recently on or about December 28, 2023),[46] despite his history of anti-Semitic Holocaust Inversion described *supra* ¶ 46.

68.    House of 3000 has also never banned "Crowsong," despite his anti-Semitic Holocaust Inversion and derisive comments about individuals of Caucasian descent described *supra* ¶ 47. He has competed in at least twenty-five House of 3000 events since around 2018, most recently on or about June 15, 2024.[47]

69.    To the extent that House of 3000 and Franco claim that they maintain their bans against Plaintiff for suspected violations of a neutrally applied "hate speech" policy, and not because he is a Jew whose Judaism necessarily entails Zionism and support of Israel, this position is false.

---

[45] See https://smashdata.gg/smash/5/player/Dwayne?id=1528394 and search for "Xeno" which were House of 3000 tournaments.

[46] See https://smashdata.gg/smash/5/player/Sho?id=29992 and search for "Xeno" which were House of 3000 tournaments.

[47] See https://smashdata.gg/smash/ultimate/player/Crowsong?id=328844 and search for "Xeno" which were House of 3000 tournaments.

House of 3000 welcomes non-Jews engaging in anti-Semitic "hate speech," thus applying a discriminatory double standard to Plaintiff, as opposed to a neutrally applied policy.

70.    As a production company and tournament organizer in the business of hosting, promoting and selling the service of Smash tournaments, House of 3000 offered the ability to contract to participate in said tournaments to the general public, but denied Plaintiff this opportunity.

**Plaintiff's Ban from SCS and Ryugacord**

71.    On or about December 26, 2023, Plaintiff was banned from Smash Crew Server ("SCS") on Discord, the largest online crew league for Smash. Plaintiff became aware of the ban when, on or about January 2, 2024, he attempted to play in a SCS organized tournament, only to be informed by the opposing team that he was on the SCS blacklist. Plaintiff was banned solely for alleged "hate speech on Twitter," an entirely different platform, rather than any of Plaintiff's communications or content on SCS or Discord as a whole.

72.    SCS's moderators and administrators however, have never banned Silas Simpson (X handle @ArbiterSkyward) for his consistent dissemination of anti-Semitic hate speech on X, including falsely accusing Israel of genocide, which constitutes Holocaust Inversion[48] and killing children for fun, echoing the Blood Libel Trope.[49] Not only has SCS failed to impose a ban on Simpson, but SCS has also utilized him as a commentator for its tournaments.

73.    SCS moderators administrators make their server generally available to individuals in New York in this judicial district, some of whom utilize this server while Plaintiff is blocked from accessing SCS in New York or anywhere else.

---

[48] *See, e.g.,* https://x.com/ArbiterSkyward/status/1843798459650060714 (Oct. 8, 2024); https://x.com/ArbiterSkyward/status/1846427242974298343 (Oct. 16, 2024).
[49] *See* https://x.com/ArbiterSkyward/status/1841237511408140733 (Oct. 1, 2024).

74.   In or about the end of December 2023, Plaintiff was banned from Ryugacord, the highest and most exclusive online Smash practice Discord server, thus depriving Plaintiff of practicing his craft against the best players in the world.

75.   Ryugacord, however, has never banned "Plusah," a prominent figure in the campaign to systematically ban Plaintiff from Smash tournaments, who regularly and publicly threatened to knock out Plaintiff's teeth and has engaged in Anti-Semitic Jewish Self-Determination Denial and Holocaust Inversion by equating Zionism with Nazism and falsely accusing Israel of genocide.[50]

76.   Ryugacord's moderators and administrators make their server generally available to individuals in New York in this judicial district, some of whom utilize this server while Plaintiff is blocked from accessing Ryugacord in New York or anywhere else.

77.   To the extent that the moderators and administrators of SCS and Ryugacord (Unknown Defendants 7) claim that they maintain their bans against Plaintiff for suspected violations of a neutrally applied "hate speech" policy, and not because he is a Jew whose Judaism necessarily entails Zionism and support of Israel, this position is false. These servers welcome non-Jews engaging in anti-Semitic "hate speech," thus applying a discriminatory double standard to Plaintiff, as opposed to a neutrally applied policy

78.   Unknown Defendants 7, the moderators and administrators of SCS and Ryugacord collectively made the decision to ban Plaintiff from their servers due to his Jewish race, religion, and national origin. Their identities are presently unknown but can be obtained through third-party subpoena or discovery of Discord. Unknown Defendants 8 requested or otherwise incited Unknown Defendants 7 to ban Plaintiff from said severs. Their identities are currently unknown but can be obtained through third-party subpoena or discovery of Unknown Defendants 7.

---

[50] These threats and statements were made in a Discord chat and Plaintiff retains screenshots.

79.    As servers on Discord, SCS and Ryugacord offered members of the public the ability to contract to participate in their servers in consideration of agreeing to adhering to certain rules and regulations but denied Plaintiff this opportunity.

**COUNT I**
Violation of Title II of the Civil Rights Act of 1964
42 U.S.C. § 2000a
(Against All Defendants)

80.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

81.    42 U.S.C. § 2000a(a) reads: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

82.    Plaintiff's Jewish race, religion, and national origin are inseparably connected to the land of Israel, its people, its sovereignty- including its use of military actions to defend itself, and in each case, Plaintiff's affinity thereto. Due to this connection and affinity, and Plaintiff's Jewish race, religion, and national origin, the Defendants denied Plaintiff the right to the full and equal enjoyment of competing in their Smash tournaments, patronizing their establishments, and/or joining their servers or otherwise successfully encouraged others to deny Plaintiff such rights.

83.    As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

84.    For this Count, Plaintiff seeks declaratory and injunctive relief, requesting that the Court declare that the bans imposed by tournament organizers, as well as the owners, operators of establishments, and servers were unlawful and that such bans are to be lifted. This requested relief applies to Luminosity, EMG, Tirrell, Unknown Defendants 1, Waypoint, Chandler, Unknown Defendants 3, House of 3000, Franco, Unknown Defendants 5, and Unknown Defendants 7.

85.    For Defendants who incited or otherwise encouraged aforestated entities and persons to ban Plaintiff, Plaintiff requests declaratory and injunctive relief declaring that such actions were unlawful and requests an order requiring these Defendants to cease and desist from inciting any further bans on Plaintiff. This requested relief applies to Defendants Mendez, Unknown Defendants 2, Unknown Defendants 4, Unknown Defendants 6, and Unknown Defendants 8. Plaintiff requests relief against these individuals per an aider, abettor, and/or inciter theory of liability and all other theories of liability available at law.

**COUNT II**
Violation of the Civil Rights Act of 1866
42 U.S.C. § 1981
(Against Defendants Luminosity, EMG, Tirrell, Unknown Defendants 1, Waypoint, Chandler, Unknown Defendants 3, House of 3000, Franco, Unknown Defendants 5, and Unknown Defendants 7)

86.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

87.    42 U.S.C. § 1981(a) reads: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

88.    Plaintiff is a racially Jewish person within the jurisdiction of the United States who, solely because of his Jewish race, was unlawfully denied the same right to contract as white citizens when Defendants blocked him from contracting to join their tournaments and/or Smash servers and/or contracting to purchase food or tournament related souvenirs.

89.    As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT III**
Violation of the Civil Rights Act of 1866
42 U.S.C. § 1982

(Against Defendants Luminosity, EMG, Tirrell, Unknown Defendants 1, Waypoint, Chandler, and Unknown Defendants 3)

90.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

91.    42 U.S.C. § 1982 reads "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

92.    Plaintiff is a racially Jewish citizen of the United States. Defendants Luminosity, EMG, Tirrell, and Unknown Defendants 1 denied Plaintiff the right to purchase personal property in the form of tournament souvenirs, including those sold at the "artist alley," when they banned him from competing in their tournaments. White citizens were permitted to make such purchases.

93.    Defendants Waypoint, Chandler, and Unknown Defendants 3 denied Plaintiff the right to purchase personal property in the form of tournament souvenirs and/or collectors' items like Pokemon cards when they banned him from Waypoint.

94.    As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT IV**
Violation of N.Y. Civ. Rights Law §40 in conjunction with §41
(Against Defendants Luminosity, EMG, Tirrell, Unknown Defendants 1, Waypoint, Chandler, Unknown Defendants 3, House of 3000, Franco, Unknown Defendants 5, and Unknown Defendants 7)

95.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

96.    N.Y. Civ. Rights Law §40 reads in relevant part as follows: "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No

person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or directly or indirectly publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color or national origin, or that the patronage or custom thereat, of any person belonging to or purporting to be of any particular race, creed, color or national origin is unwelcome, objectionable or not acceptable, desired or solicited."

97.    Defendants are or were at all relevant times hereto owners, lessees, proprietors, managers, superintendents, agents  and/or employees of places of public accommodations, resort and/or amusement.

98.    Plaintiff is of Jewish race, creed, and national origin, and as a result, Defendants denied Plaintiff access to their establishments and further transmitted communications to Plaintiff that he was being denied access on such grounds.

99.    As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

100.  Plaintiff seeks all damages and equitable relief to which he is entitled at law, including but not limited to the relief indicated in N.Y. Civ. Rights Law §41.

**COUNT IV**
Violation of N.Y. Civ. Rights Law §40-c
(Against Defendants Luminosity, EMG, Tirrell, Unknown Defendants 1, Waypoint, Chandler, Unknown Defendants 3, House of 3000, Franco, Unknown Defendants 5, and Unknown Defendants 7)

101.  Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

102.  N.Y. Civ. Rights Law §40-c states in relevant part as follows: "No person shall, because of race, creed, color, [or] national origin . . . be subjected to any discrimination in his or her civil rights . . . by any other person or by any firm, corporation or institution."

103.  Plaintiff possessed a civil right to participate in Defendants' tournaments and/or patronize their establishments and/or affiliate with their groups, be it online or in person. Because of Plaintiff's Jewish race, creed, and national origin, Defendants denied him access.

104.  As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT V**
Violation of N.Y. Civ. Rights Law §41
(Against Jonathan Mendez, Unknown Defendants 2, Unknown Defendants 4, Unknown Defendants 6, and Unknown Defendants 8)

105.  Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

106.  N.Y. Civ. Rights Law §41 in relevant part states as follows: "Any person who . . . shall violate any of the provisions of sections forty . . . or who or which shall aid or incite the violation of any of said provisions . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved."

107.  On or about December 20, 2023, Jonathan Mendez tweeted to the LMBM organizers "why is this racist zionist weasel allowed at your events" and other tweets, as described *supra* ¶ 37, aimed at causing Plaintiff to be banned from LMBM on grounds connected to Plaintiff's Jewish race, creed, and national origin as related to Israel. In direct response to Mendez's tweets, LMBM organizer Tirrell announced that Plaintiff would be banned.

108.  By advocating and campaigning for Plaintiff to be banned from LMBM on account of his race, creed, and national origin—a request that was granted—Mendez aided and/or incited a violation of N.Y. Civ. Rights Law §40.

109.  Mendez was not the only individual who contacted tournament organizers and servers to incite Plaintiff's ban. Unknown Defendants 2, 4, 6, and 8 also partook in such actions.

110.  As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

111.  Plaintiff seeks all damages and equitable relief to which he is entitled to at law, including but not limited to the relief provided in the subject statute.

**COUNT VI**
Violations of New York City Human Rights Law
NYC Administrative Code 8-107(4)
(Against Defendants Luminosity, EMG, Tirrell, Unknown Defendants 1, Waypoint, Chandler, Unknown Defendants 3, House of 3000, Franco, Unknown Defendants 5, and Unknown Defendants 7)

112.  Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

113. NYC Administrative Code 8-107(4) in relevant part reads as follows: "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation: Because of any person's actual or perceived race, creed, [or] national origin . . . directly or indirectly: To refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation."

114. The statute further prohibits any such owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public

accommodation "[d]irectly or indirectly to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that: Full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, facilities, and privileges of any such place or provider of public accommodation shall be refused, withheld from or denied to any person on account of race, creed, [or] national origin . . . or [t]he patronage or custom of any person is unwelcome, objectionable, not acceptable, undesired or unsolicited because of such person's actual or perceived race, creed, [or] national origin."

115. Defendants relevant to this count were owners, proprietors, managers, agents, and/or employees of places and/or providers of public accommodations. Because Plaintiff's Jewish race, creed, and national origin is intimately connected to Israel, Defendants denied Plaintiff the full and equal enjoyment, on equal terms and conditions, of their accommodations, advantages, services, facilities, or privileges of participating in their tournaments, purchasing their products, and/or being a member of their groups.

116. Defendants also made declarations, publications, posts, and/or written communications asserting that Plaintiff would be denied full and equal enjoyment, on equal terms and conditions, of participating in their tournaments, purchasing their products, and/or being a member of their groups and that his patronage is similarly unwelcome, objectionable, not acceptable, undesired and unsolicited because of Plaintiff's Jewish race, creed, and national origin.

117. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT VII
Violations of New York City Human Rights Law
NYC Administrative Code 8-107(6)
(Against Jonathan Mendez, Unknown Defendants 2, Unknown Defendants 4, Unknown
Defendants 6, and Unknown Defendants 8)

118.  Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

119.  NYC Administrative Code 8-107(6) reads: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

120.  On or about December 20, 2023, Jonathan Mendez tweeted to the LMBM organizers "why is this racist zionist weasel allowed at your events" and other tweets as described *supra* ¶ 38 aimed at causing Plaintiff to be banned from LMBM on grounds connected to Plaintiffs Jewish race, creed, and national origin as related to Israel. In direct response to Mendez's tweets, LMBM organizer Tirrell announced that Plaintiff would be banned.

121.  By issuing his requests that Plaintiff be banned from LMBM on account of his race, creed, and national origin—a request that was granted—Mendez acted to aid, abet, incite, compel and/or coerce LMBM to violate the NYC Administrative Code 8-107(4) described *supra* Count VI.

122.  Mendez was not the only individual who contacted tournament organizers and servers and acted to aid, abet, incite, compel and/or  coerce the imposition of Plaintiff's bans. Unknown Defendants 2, 4, 6, and 8 also partook in such actions.

123.  As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT VIII
Violation of New York Executive Law § 296(2)(a)
(Against Defendants Luminosity, EMG, Tirrell, Unknown Defendants 1, Waypoint, Chandler, Unknown Defendants 3, House of 3000, Franco, Unknown Defendants 5, and Unknown Defendants 7)

124.  Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

125.  New York Executive Law § 296(2)(a) reads in relevant part as follows: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager,

superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed . . . [or] national origin of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, [or] national origin . . . or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, [or] national origin . . . is unwelcome, objectionable or not acceptable, desired or solicited."

126.  Defendants are or were at all relevant times hereto owners, lessees, proprietors, managers, superintendents, agents  and/or employees of places of public accommodation, resort and/or amusement.

127.  Plaintiff is of Jewish race, creed, and national origin, and as a result, Defendants denied Plaintiff access to their establishments and further transmitted communications to Plaintiff that he was being denied access on such grounds.

128.  As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT IX
Violation of New York Executive Law § 296(6)
(Against Jonathan Mendez, Unknown Defendants 2, Unknown Defendants 4, Unknown
Defendants 6, and Unknown Defendants 8)

129.  Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

130.  New York Executive Law § 296(6) reads in full: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

131.  On or about December 20, 2023, Jonathan Mendez tweeted to the LMBM organizers "why is this racist zionist weasel allowed at your events" and other tweets as described *supra* ¶ 38 aimed at causing Plaintiff to be banned from LMBM on grounds connected to Plaintiff's Jewish race, creed, and national origin as related to Israel. In direct response to Mendez's tweets, LMBM organizer Tirrell announced that Plaintiff would be banned.

132.  By issuing his requests that Plaintiff be banned from LMBM on account of his race, creed, and national origin—a request that was granted—Mendez sought to aid, abet, incite, compel and/or coerce the banning of Plaintiff and his attempt to do so was successful.

133.  Mendez was not the only individual who contacted tournament organizers and servers and incited the imposition of  Plaintiff's bans. Unknown Defendants 2, 4, 6, and 8 also partook in such actions.

134.  As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT X
### Breach of Contract
### (Against EMG and Luminosity)

135.  Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

136.  "Under New York law, the elements of a cause of action for breach of contract are: (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." *Turner v. Temptu Inc*., 586 F. App'x 718, 720 (2d Cir. 2014).

137.  A contract existed whereby, in consideration of Plaintiff furnishing a $150 registration fee, EMG and Luminosity were obligated to permit Plaintiff to compete in LMBM. Plaintiff furnished

said registration fee. EMG and Luminosity did not permit Plaintiff to participate in LMBM. Plaintiff suffered damages in the form of his lost registration fee.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A. That the Court enter judgment against Defendants and award damages no less than $1,000,000 (One Million Dollars);

B. That the Court enter judgment in favor of Plaintiff against Defendants for all equitable monetary damages available under the law including injunctive relief requiring Defendants to permit Plaintiff to participate in their tournaments, patronize their establishments, and join their groups;

C. That the Court order Defendants to pay compensatory damages;

D. That the Court order Defendants to pay punitive damages;

E. That the Court order Defendants to pay Plaintiff's reasonable attorney's fees, expert fees, and costs; and

F. That the Court order Defendants to pay pre-judgment and post-judgment interest as provided by law.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all claims against Defendants.

Date: December 16, 2024                    Respectfully submitted,


                                           National Jewish Advocacy Center, Inc.

                                           By:   /s/ Lauren Israelovitch
                                           Lauren Israelovitch
                                           666 Harless Place
                                           West Hempstead, NY 11552
                                           Phone: (914) 222-3828
                                           lauren@njaclaw.org


                                             /s/         *Matthew Mainen*
                                           Matthew Mainen
                                           Maryland Bar No. 2012170265*
                                           *Pro Hac Vice Application Pending*
                                           666 Harless Place
                                           West Hempstead, NY 11552
                                           Phone:  (301) 814-9007
                                           Email: matt@njaclaw.org
                                           *Attorney does not practice in New York;
                                           mail will be forwarded to him in Maryland

33